INTERNATIONAL HARVESTER CO. OF AMERICA *v*. MERRIMAC VENEER CO.

[81 South, 277, Division B, No. 20638.]

1. SALES. *Construction of order.*

Where a truck was ordered, the name of the manufacturer printed on the order blank being stricken out and the name of dealer written therein, such an order will be construed as an order to the dealer who owned the truck, and not to the manufacturer; since written provisions are more significant than printed words in a writing.

2. PRINCIPAL AND AGENT. *Purchase of truck. Recovery against manufacturer.*

Where an automobile truck dealer purchased a truck from the manufacturer, and sold it and received an initial cash payment upon the sale, and delivered it to the purchaser, in such case the purchaser, upon returning the truck to the dealer, on account of defects in the truck could not recover the initial payment from the manufacturer as an undisclosed principal, although the representative of the manufacturer assisted the dealer in making the sale.

APPEAL from the circuit court of Hinds county. HON. W. H. POTTER, Judge.

Suit by the Merrimac Veneer Company against the international Harvester Company and others. From a judgment for plaintiff, the defendant appeals.

The facts are fully stated in the opinion of the court.

*J. S. Sexton,* for appellant.

There is at least one part of counsel's brief which is very illuminating and helpful in this cause and that

is, the original order appended thereto. This order is the foundation of the whole case and is so treated in the declaration therein, where it is referred to as follows: "a copy of the contract above mentioned is made a part of this declaration and filed herewith as Exhibit "A" and the original thereof will be introduced on the trial of the cause." While this order was made the basis of the suits it will be remembered that Plaintiff undertook to add thereto by an imaginary addition which was to follow by mail, but let us examine the order itself.

I said in the original brief and I now repeat "That a moderately well educated twelve year old child need not have erred in determining as to whom this order was addressed." How do counsel for appellee dispose of this order? They dispose of it by the following remarkable suggestion "we submit that the striking out the word "company" in the capition and the writing of the name of "Vaughn & Teague" above same can be treated only as a memorandum. Had it been the intention of the parties to deal only with Vaughn & Teague, surely the name of International Harvester Company of America would have been stricken from the main body of the order." Counsel do not enlighten us by stating what they mean by the words "only as a memorandum." But it is manifest that they use the words as synonymous with the words "A mere nothing." Let us follow this argument to its legitimate conclusion. After the words "Vaughn & Teague" in the same hand writing and immediately following, we find the words "Jackson, Miss." Does this mean "Only a memorandum," a "mere nothing" or does it mean that Jackson, Mississippi, was the address of Vaughn & Teague? Immediately following that address we find inserted, in the same hand writing and written with the same pencil, after the word "model" the following initials "F. H. Is this "only a memorandum" or does it

indicate the model of truck desired? Immediately following we find inserted, in the same hand writing and written with the same pencil the words "Byram" "Hinds" after the word county, and Miss," After the word "Stole" is this "only a memorandum," or does it indicate the postoffice address of the purchaser? Following the words "size of tire," "style" "style of top" all of which is printed on the stationary used for the order, we find a detailed description of everything purchased, in the same handwriting and written with the same pencil. Is this "only a memorandum," or is it a detailed description of the property purchased? Finally, we find the purchase price "two- three thousand dollars," the amount to be paid in cash "two hundred and fifty dollars" and the words "balance cash on delivery" inserted in the same hand writing and written with the same pencil on this order sheet. Is this a "memorandum only," or is it the detailed account of the purchase price and terms of payment? Lastly, we find the order signed as follows:

"Merrimac Veneer Company,
W. E. Tuxford, Mgr."

The same pencil was used in signing the order as was used in addressing the order. Is this a "memorandum only" and is it to be treated as a mere nothing or is this the signature of the concern who made the order?

Again referring to this order, counsel say: "The warranty and agreement on the back of the sheet is the warranty and agreement of the International Harvester Company of America." Turning now to the back sheet we find there is not as much as a "pencil memorandum" on it. It is signed by nobody addressed to nobody and is not a warranty of anything on earth, to anybody on earth. Then counsel after having argued that this is the warranty of the International Harves-

ter Company, takes another turn and says that "the record shows this order was never accepted by the general agent of the company. The order further shows "if this order if not accepted the advance payment or deposit made herein will be refunded," and from that, would have the court concluded that because the order, which is made the basis of the contract, was never signed by the agent of the International Harvester Company and cuts no figure in the case, the International Harvester Company should refund two hundred and fifty dollares which was paid by Plaintiff to Vaughn & Teague merely because upon its stationary is found the printed words "if this order is not accepted the advance payment or deposit made herein will be refunded.?"

Of course, we can all conceive of a state of case where the International Harvester Company could be bound as an undisclosed principal, even though the plaintiff had only known Vaughn & Teague in the transaction but there is not a hint of that theory of the case to be found either in the declaration or proof in this case.

The fact is that the word "agent" only appears once in the declaration and that is found in the first sentence of the same where it is stated that the International Harvester Company has "an agent in Hinds County upon whom process can be served" (Without even indicating who such agent is).

Let it be remembered that when all the plaintiff's proof was in and it was forced by the court to abandon the partnership theory on which the case had been planted the only amendment it sought to make to the case was to strike out the name of Vaughn & Teague wherever the said Vaughn & Teague are named as parties.

Read the declaration with the names of Vaughn & Teague omitted and we simply have a suit by plaintiff against the International Harvester Company based

upon an unaddressed and unaccepted order written on the blank stationary of the International Harvester Company which carries on its face the notice that "this order can be accepted only by the general agent of the Company. No other person has any authority to add to or change any of its term, etc."

The whole theory of plaintiff's case, as appears, from the brief filed by its counsel, where the word "agent" occurs some fifteen or twenty times, seems to be based on the claim that Vaughn & Teague were the agents of the International Harvester Company in this particular transaction and that it must refund the amount collected by Vaughn & Teague by whom the machine was sold, regardless of the facts shown by the record.

The truth is that, aside from the loose and confused use of the word "agent" found in one or two instances the whole record refutes the contention that there was any agency of any character connected with this immediate transaction. The only pretense of agency on the part of the plaintiff is found in the testimony of the witness, Tuxford, who claims that he was dealing with Vaughn & Teague and the agent of the International Harvester Company.

I submit with perfect confidence that neither the pleadings nor the proof in this case can justify for a moment the contention that the International Harvester Company, who neither owned nor collected the advance payment on the truck, should refund the amount collected by Vaughn & Teague on a truck owned by them, sold by them and collected for by them, according to the undisputed facts of this case. Let the member of the court who happens to handle this record look to the north side of Capitol Street immediately after turning into the same from West Street toward the I. C. Railroad and he will see in bold letters the sign "Vaughn & Teague" over the lower story of the building still

occupied by them. He will also see inside the building a stock of automobiles presumably owned by Vaughn & Teague, because they are in possession of the same and certainly their property so far as their creditors are concerned under the "business sign" statute of this state.

If he will step inside and offer to purchase an automobile he will, in all probobility, find a gentleman direct from the factory from which these machines are purchased, ready to demonstrate and swear by the particular machine which he may wish to buy. Suppose the transaction is closed under these circumstances and Vaughan & Teague sell the machine and collect the money therefor and it turns out that it is not exactly what it was represented to be.

Would it ever occur to the purchaser of the machine, under these circumstances, that he could ignore Vaughn & Teague and sue the maker or original vendor of the machine simply because Vaughn & Teague had the exclusive right to sell that make of machine in a limited territory or block in Mississippi? To ask the question is to answer it and to reverse this case.

*R. H. & J. H. Thompson,* for appellees

The Merrimac Veneer Company was interested in the purchase of a motor truck. Vaughn & Teague, of Jackson Mississippi, were the agents of the International Harvester Company, a truck manufacturer, and had the exclusive right to sell its trucks within a certain territory embracing Hinds and adjoining counties, and were being aided in making sale of trucks by one Hufford, an employee of the International Harvester Company, sent to Jackson for that purpose. Hufford and Vaughn & Teague undertook to induce the Merrimac Veneer Company to buy an international Truck; and they represented to the Merrimac Company that the truck they

proposed to sell would come up to certain requirements. On the faith of their promises the Merrimac Company was induced to order the truck and to advance two hundred and fifty dollars in the purchase price of same. According to the terms of the trade the truck was warranted to carry a load of one hundred feet of logs, and a written warranty to that effect was to be sent to the Merrimac Company and it was further agreed that should the truck fail to come up to the warranty after a fair trial the cash paid in advance would be refunded. The Merrimc Company, relying upon the solvency and high standing the International Harvester Company, did not hesitate to pay the two hundred and fifty dollars in advance of seeking the truck, feeling assured that it could safely deal with such a responsible concern. The truck arrived and was delivered to the Merrimac Company, but it wholly failed to come up to the terms of the warranty, and the Merrimac Company promptly notified the agent of the Harvester Company that the truck was refused for that reason and the Merrimac Company demanded that the cash paid by it be refunded. The agents of the International Harvester Company took possession of the truck and carried it away, but failed, neglected and refused to refund the two hundred and fifty dollars; and this suit was instituted by the Merrimac Company to recover the amount. The "mixed situation" as to the facts referred to by counsel for appellant arises not from any "scrambled" legal relations existing between the Merrimac Company and the Harvester Company but arises wholly from the attempt on the part of the Harvester Company to disclaim the acts of its agents and to becloud the issue between it and the Merrimac Company by setting up the fatuous claim that it had no connection with the transaction and that the Merrimac Company was dealing with its agents as individuals only. The awkward effect at Camouflage on the part of the Harvester Com-

pany was entitled to receive scant consideration from court and jury. The record shows the International Harvester Company appointed Vaughn & Teague its exclusive agents for a certain territory, sending to them a man from its factory, whose salary it paid, to assist them in making sale of its trucks, arming them with its literature such as pictures price lists, specifications and contract blanks. The agents misrepresented the truck, the truck failed to come up to the standard contracted for, and was rejected for cause, was carried away by the International Harvester Company's agents and when the Harvester Company was called upon to refund the amount advanced according to contract, it claimed it was not a party to the transaction and advised the Merrimac Company that it could look only to Vaughn & Teague, individually. Being compelled to sue and having cause to anticipate a claim of this character on the part of the Harvester Company and knowing that the truth would come out on a trial, the Merrimac Company joined Vaughn & Teague as co-defendants with the Harvester Company. On the trial, when it became apparent that Vaughn & Teague had dealt with the Merrimac Company only as agents of the Harvester Company, the suit was dismissed as to Vaughn & Teague. If Vaughn & Teague were improperly joined in the suit, this error was corrected as soon as the facts came to light. The plaintiff had to grope in the dark more or less until the defendants showed their hands. As the testimony developed, it became too clear for argument that plaintiff had been dealing all along with the International Harvester Company, the person with whom it thought it had been dealing from the very out set. Vaughn & Teague were not only the exclusive agents for the International Harvester Company in Hinds and adjoining counties but they were aided and assisted in inducing the Merrimac Company to order the truck by an em-

ployee of the International Harvester Company sent to Jackson from its home office, armed with its literature and order blanks and, apparently, clothed with full authority to sell trucks for the International Harvester Company and to bind that company in making sales. The International Harvester Company gave to no person the right to sell trucks in Hinds and adjoining counties other than Vaughn & Teague, and Vaughn & Teague were likewise supplied with the Company's literature and order blanks. The International Harvester Company held out Vaughn & Teague as its agents and clothed them with apparent authority to represent it in the selling of International trucks. The Merrimac Company was induced to believe it was dealing with the International Harvester Company and not until after the trouble arose did it learn that it would be confronted with a claim that it had not been dealing with the international Company but with Vaughn & Teague. The representative from the factory who "did most of the talking" was a salaried employee of the International Harvester Company and, yet, that Company undertook to show by the witness Jetmore, its Southern Manager, that this man's movements were wholly under the control of Vaughan & Teague and that the International Harvester Company had no authority or control over him. This was clearly a ridiculous pretense and was not entitled to serious consideration. There is not one line of testimony in the record showing or tending to show that the Merrimac Company had any knowledge as to any private contract which existed between the International Harvester Company and Vaughn & Teague. The disclaimer of agency came up for the first time after trouble had arisen. The record justifies the conclusion that the Harvester Company permitted Vaughan & Teague to act as its agents so long as everything was running

its way but, when things went wrong, a very different relation was to be asserted.

The International Harvester Company by its conduct as shown of record is estopped to deny the agency of Vaughan & Teague and Hufford, or of either of them. That the Harvester Company caused and permitted Vaughan & Teague and Hufford to appear to be its agents is too clear for argument; and that the Merrimac Company in good faith and in the exercise of reasonable prudence dealt with them as the agents of the International Harvester Company is not denied. Certainly the Harvester Company permited Vaughn & Teague and Hufford to hold themselves out as agents and lent credence to the idea of an agency by supplying all of them with its literature and ordering blanks and by giving Vaughn & Teague the exclusive right to sell trucks within a designated territory. The Merrimac Company paid out its money in advance of seeing the truck on its faith in the solvency and integrity of the Harvester Company. The International Harvester Company by its conduct clothed Vaughn & Teague and Hufford with apparrent authority to represent it in the sale of its trucks, and there was clearly an ostensible agency created by the acts of the Harvester Company. See 31 Cyc. page 1234 et seq.

Counsel for appellant appears to have never gotten away from the erroneous assumption upon which the record discloses he acted from the beginning of the trial, namely that the International Harvester Company had nothing whatever to do with the transaction involved in this suit and was a stranger to the contract. The confusion arising from the joinder of Vaughn & Teague as defendants rapidly disappeared when the testimony was developed; and, as soon as it became clear that the plaintiff had no notice of and could not be bound by any private arrangements existing between the Harvester Company and its agents. The status of the parties

became clear and the trial court could not have properly ruled other wise than as it did. ·

The record discloses on the one hand the utmost good faith, on the part of the Merrimac Company throughout the transaction and a clear breach of duty on the part of the International Harvester Company, acting through its agents, on the other hand. The trial court submitted the controversy to the determination of the jury under instructions clearly defining the issue and the defendant's rights were not even remotely prejudiced by the granting of any instructions for plaintiff or the refusal of any instruction asked by defendant. The International Harvester Company caused the Merrimac Company to believe it was dealing with it, and its agents mis-represented the truck, failed to live up to the promises made by them, took back the truck, and kept plaintiff's money; and the judgment of the lower court is founded on simple justice and should be affirmed.

Counsel for appellant attaches to his brief a copy of the order for the truck. The original of this order is appended thereto and the court will observe from the same that the order is addressed to the International Harvester Company of America. Where the word "company" is stricken out apears merely in the heading or caption. We submit that the striking out of the word "Company" in the caption and the writing of the name of Vaughn & Teague above same can be treated only as a memorandum. Had it been the intention of the parties to deal only with Vaughn & Teague, surely the name of International Harvester Company of America would have been Stricken from the main body of the order. The name of the International Harvester Company of America appears on this order in three different places and there was no attempt to strike out this name at any place. The warranty and agreement on the back of the sheet is the warranty and agreement of the International Harvester Company of

America. The record shows this order was never accepted by the general agent of the company. The order further shows "if this order is not accepted the advance payment of deposit made herein will be refunded." Irrespective of all other features of the case and treating this order as the whole of the contract which it was not there was no sale, and the Merrimac Company was entitled to recover back the money paid in advance. Even had this order been formally accepted there was a failure on the part of the International Harvester Company to furnish to the Merrimac Company the additional warranty promised, and this alone entitled the Merrimac Company to decline the truck and to recover the money advanced. Even had the special warranty promised been furnished, the truck did not come up to the terms of same and the Merrimac Company would have been justified in declining the truck and would have been entitled to recover the money advanced. It is thus clear that, from every view of the matter, the judgment appealed from was a just one.

Stevens, J., delivered the opinion of the court.

This controversy developed from an order given by appellee for a certain truck manufactured by the International Harvester Company, the appellant, and attempted to be sold to the appellee company by Vaughn & Teague, agents for and dealers in this make of trucks in the city of Jackson. Appellee, as plaintiff in the court below, sued appellant and the firm of Vaughn & Teague jointly. The effort is to recover the sum of two hundred and fifty dollars advanced by appellee as a part of the price of the truck when the order was given. The declaration demands judgment "of and from the defendants an each of them." As a part of plaintiff's cause of action it filed with the declaration as Exhibit A the written order for the truck. The controversy hangs large-

120 Miss.—36.

ly upon the true interpretation of the written order. The order was written on printed stationery of the International Harvester Company used for ordering motor trucks. In bold type in the caption of the order sheet are the printed words "Order to Company for Motor Trucks" These words were changed by striking out the word "Company" so as to make the caption read, "Order to Vaughn & Teague, Jackson, Mississippi, for Motor Truck." The confusion arises from the fact that on the line below the words mentioned, in small type, is to be found what purports to be the address of the order. "International Harvester Company of America." On the next line is the printed word "Gentlemen," followed by the body or main provisions of the order itself. The printed order had blank spaces for the description of the purchases and the specifications of the motor truck, and the order in this case was duly signed by appellee, and, under the undisputed proof, delivered to Vaughn & Teague at their place of business in Jackson. The initial cash payment of two hundred and fifty dollars was made to Vaughn & Teague. The testimony shows beyond dispute that Vaughn & Teague delivered the truck; one member of this firm going in person to Byram with the new truck for the purpose of testing it out and demonstrating its use. After certain objections were made to the truck, and appellee declined to accept it, Vaughn & Teague sent for and took back the truck. On the trial of the case Vaughn & Teague filed a plea of the general issue and gave notice of special matters to be offered in defense. Appellant also filed similar pleadings. At the conclusion of the testimony there was a motion by the defendants Vaughn & Teague. The court required the plaintiff to elect as to which of the defendants it would pursue, and plaintiff thereupon took a nonsuit against Vaughn & Teague and proceeded to a final judgment against appellant. From this judgment an

appeal is prosecuted; the main contention being that there is no liability whatever.

There was much said on the trial of the case upon certain issues as to whether there was a warranty as to the capacity load of the truck and its equipment; as to whether the truck came up to description and specifications, and generally as to whether the plaintiffs were justified in declining acceptance and returning the property.

In our judgment we must dispose of this appeal upon the general ground of no liability so far as the rights of appellant company are concerned. As we interpret the pleadings, the written order, and the undisputed testimony, Vaughn & Teague, while in a general way agents for the International Harvester Company trucks in a block of territory surrounding Jackson, nevertheless are independent dealers in these motor trucks, and as such brought the truck in question out-right from appellant some six months prior to the time it was sold and delivered to appellee. Vaughn & Teague had a place of business in Jackson, offered the truck for sale, received and accepted the written order, received the initial cash payment, and delivered the truck. Under the well-recognized doctrince that written provisions are more significant than printed words in a writing brought in question, we construe the order as one to Vaughn & Teague. Certain it is that appellee company well knew that Vaughn & Teague were handling these trucks; its manager applied to Vaughn & Teague for the purchase of the truck and had all his negotiations with Vaughn & Teague. The proof beyond dispute shows that Vaughn & Teague were the absolute owners of the property attempted to be sold appellee. They had both title and possession, and actually made delivery. How can it be said, then, that appellant company sold a truck which it did not own and is responsible for an initial cash payment which it

did not receive and from which it derived no benefit, except the most general one of being interested in the promotion and sale of an article which it had manufacured and wished to see freely sold over the country? To overcome this strong showing for the appellant, counsel for appellee offered proof tending to show that one Mr. Hufford, a special representative of appellant company, was present at the time plaintiff negotiated for the truck; that this special representative did most of the talking and made most of the reperesentations as to the capacity and adaptability of the truck to haul green logs, etc. The proof as a whole, however, shows that this representative was one from the Chicago office of the company, and was "sent out to visit with the dealers and instruct them in the use, operation, and handling of the trucks." Mr Hufford did not take the order as a representative of appellant had himself no place of business in Jackson, did not transmit the order to appellant, and did not deliver or accept pay for the truck. This is not a case where appellee dealt with the agent of a nondisclosed principal, or with one who represented himself to be and held himself out to be the exclusive agent of a known principal. It is a case in which the realities must govern.

No liability being shown, the judgment of the learned circuit court must be reversed, and judgment entered here for appellant.

*Reversed, and judgment here for appellant.*